TATE'S EX'R

*v.*

HULL *et al.*

(*Supreme Court of Appeals of Virginia, July, 25, 1895.*)

[22 S. E. Rep. 502.]

**Bankruptcy Proceedings—Binding Effect of Decree—Subsequent Suit in State Court.***

A judgment creditor, who proves his debt by bankruptcy proceedings, and takes an active part in these proceedings, cannot afterwards go into a state court to subject property sold by the assignee in bankruptcy on any ground of error which might have been corrected in the bankrupt court, or by appeal from the order or decree of that court.

Appeal from circuit court, Wythe county ; Williams, Judge.

Bill by Henry B. Hull and another against M. B. Tate's executor.   Decree for complainants, and defendant appeals. Affirmed.

*Daniel Trigg,* for appellant.

*A. A. Campbell, J. J. Stuart,* and *White & Penn,* for appellees.

KEITH, P., delivered the opinion of the court.

A bill was filed in the circuit court of Wythe county by

*See foot-note to Spilman *v.* Johnson, 27 Gratt. 33 (Va. Rep. Anno.) ; also, monographic note on "Bankruptcy and Insolvency" appended to Dillard *v.* Collins, 25 Gratt. 343 (Va. Rep. Anno.).

Va Dec—11

Henry B. Hull and William A. Stuart, afterwards removed to Wythe county, in which they state they are the owners of the mineral rights in a certain tract of land in Rye Valley, Wythe county, Va., commonly known as the "Rock Ore Bank Tract"; that one-half interest in this land was purchased by R. K. Williams from Moses Peirce, and on the death of Williams descended to his heirs, by whom it was conveyed to the plaintiffs. The other half of the said tract of land was owned by George Peirce, the brother of Moses Peirce, and was purchased by G. F. Barton in the chancery suit of Barton v. Peirce's Heirs, lately pending in the circuit court of Wythe county. Barton afterwards sold the land thus purchased to R. K. Williams, and bound himself to make a good and sufficient deed for the same. It thus appears that R. K. Williams had both the legal and equitable title to one-half of the Rock Ore Bank Tract, derived by deed from Moses Peirce, and was the equitable owner of the other half, derived through the Bartons from George Peirce. It is alleged that Williams and those holding under him have had continuous and uninterrupted possession of the Rock Ore Bank Tract of land from January 21, 1857, to the present time. At February rules, 1871, M. B. Tate filed his bill in chancery against G. F. Barton and others in the circuit court of Wythe county. The object of the bill was to enforce the lien of a judgment in the name of the Northwestern Bank of Virginia against G. F. Barton, Conrad Farris, and William Porter for the sum of $418, with interest and costs. The bill averred that Barton owned several tracts of land in Wythe county, on which the judgment was a lien. Among other tracts described, and the only one in which the parties to this suit are concerned, is the Rock Ore Bank Tract. At the April term, 1872, of the court, George E. Penn was directed to take an account of the debts and their priorities. His report was filed on the 14th of August, 1872. At the September term following, the court confirmed the said report, and Derric was appointed a commissioner to sell the lands of G. F. Barton,

mentioned in the bill. On the 27th of August, 1872, G. F. Barton filed his petition in the district court of the United States, asking to be adjudged a bankrupt, and upon his petition such proceedings were had that he was adjudged a bankrupt, and subsequently obtained his discharge. With his petition to the bankrupt court, Barton filed schedules of his real estate, and a list of his creditors. M. B. Tate, the plaintiff here, who represented the greater part of the indebtedness against G. F. Barton, appeared before the commissioner in pursuance to notice, proved his debts against the bankrupt, amounting to $3,246.14, and Daniel Trigg was chosen assignee of the bankrupt, which position was duly accepted by him. The debts proven in the bankrupt court were the same as those proven in the cause of M. B. Tate v. Barton, above referred to, pending in the circuit court of Wythe county. The debt of the Northwestern Bank was not reported either by Commissioner Penn in the state court or before the commissioner in the proceedings in bankruptcy; but subsequently, at the instance of the administrator of Conrad Farris, who was one of the sureties in the debt due the Northwestern Bank, Tate was compelled to prove his judgment, and it was paid out of the proceeds of the sale of the tract of land containing 127 acres, upon which it constituted a lien. On the 13th of December, 1872, the district court of the United States issued a restraining order prohibiting Commissioner Derric from making sale of the lands of Barton under the decree of the circuit court of Wythe county. A copy of this order of injunction is filed as a part of the bill in this case.

Barton, by his schedule filed in the bankrupt court, surrendered various tracts of land, and among them he recites the tract which is now in dispute in this case, described as the "Rock Ore Bank Tract"; and upon the schedule is indorsed, "This tract is in the possession of the heirs of Rufus K. Williams." As soon as it became known to the heirs of Williams that Barton had surrendered the lands in which they were

interested, they filed their petition in the district court of the United States, and thereupon such proceedings were had that Daniel Trigg, the assignee, was ordered to make a conveyance of the land embraced in the petition to the heirs of B. K. Williams. This deed was duly executed by the assignee, acknowledged, and admitted to record, and is filed as an exhibit with the bill. It will thus be seen that the legal title to George Peirce's interest became united by the deed of Daniel Trigg, assignee, as aforesaid, with the equitable title in the heirs of R. K. Williams. It further appears from the bill that the plaintiffs purchased this half also from the heirs of R. K. Williams. All this while the original suit of M. B. Tate v. G. F. Barton and others remained upon the docket of the circuit court of Wythe county, and on the 24th of April, 1878, more than three years after the recordation of the deed from Daniel Trigg, assignee of G. F. Barton, to the heirs of R. K. Williams, an order was entered in the cause, reviving it against Daniel Trigg, assignee as aforesaid. By an order of the 30th of September, 1878, James H. Gilmore was substituted as commissioner in the place of Derric, and directed to sell the land in the bill mentioned. The sale was made, and M. B. Tate, the plaintiff, was reported, at the April term, 1879, as the purchaser of the one-half interest of George Peirce in the Rock Ore Bank Tract for the sum of $10. Subsequently, James H. Gollihorn, who had been substituted as commissioner, was directed to execute to M. B. Tate a deed for the land purchased by him at the sale made by J. H. Gilmore, and confirmed as above set forth. The bill of Hull and Stuart, after setting out in much detail the facts, a mere synopsis of which has been here given, charges that the deed made by Commissioner Gollihorn constitutes a cloud upon their title, so far as it relates to the Rock Ore Bank Tract, and prays that it be set aside and annulled, and that M. B. Tate be perpetually enjoined and restrained from any further proceedings in the suit of M. B. Tate v. G. F. Barton and others, in the circuit

court of Wythe county, so that their title to the Rock Ore Bank Tract may be established and quieted, and for other and further relief. To this bill Tate filed his answer, which denies that the complainants are the owners of the mineral rights in the Rock Ore Bank Tract. He alleges that the title bond from Barton to Williams was never recorded, and therefore denies that R. K. Williams was ever the owner of the said tract, except subject to liens of creditors of G. F. Barton upon judgments obtained before the recordation of the said title bond, or the deed afterwards obtained by the heirs of R. K. Williams under the proceedings in bankruptcy, heretofore described. Respondent also denies that R. K. Williams, and those holding under him, have held continuous and uninterrupted possession of said land from the 21st of January, 1857, to the present time. He sets forth the proceedings in the suit of Tate v. Barton, the record in which he prays may be made a part of his answer, and avers that Williams and his heirs were in fact pendente lite purchasers with full knowledge of the litigation in the case of Tate v. Barton, in which the land in controversy was sold; and, having knowledge of those proceedings, it was their duty to assert their rights in that case, if they had any. He denies that the proceedings in the bankruptcy case can have any effect upon his rights, and claims that the proof of the debt in bankruptcy does not discharge any lien attached to the debt. There are many other averments in the answer, which need not be more specifically adverted to. Suffice it to say that upon the issues made in the pleadings such proofs were submitted and such proceedings had that on the 12th day of May, 1893, the judge of the circuit court of Wythe county entered a decree granting the plaintiffs all the relief asked for, and from that decree Tate's executors obtained an appeal to this court.

We are of opinion that the decree of the circuit court is plainly right. The district court, by its decree of the 13th of December, 1872, acquired jurisdiction over the parties to this

litigation and the subject-matter of this controversy. It has been held by this court "that a creditor by judgment, who proves his debt in bankruptcy proceedings, and takes an active part in these proceedings, cannot afterwards go into a state court to subject property sold by the assignee of the bankrupt on any ground of error which might have been corrected in the bankrupt court, or by appeal from the order or decree of that court." Spilman v. Johnson, 27 Grat. 33. It seems to be clear that the district court of the United States, having obtained jurisdiction over the estate surrendered by Barton, had ample power to administer it, and that the parties are bound by the proceedings in that court. M. B. Tate was a party to those proceedings, proved his debt, and participated in the selection of the assignee. Ordinarily he had two courses open to him. He could have stayed out of the district court, and relied upon the lien of his judgment and his right to enforce it in the state court, but having, in this case, been requested to prove it in the bankrupt court, he is bound by the action of the court. The district court, with all the liens reported to it which were reported in the state court, and, in addition thereto, the lien of appellant's judgment, just referred to, directed its assignee to convey this land to the heirs of R. K. Williams, and by force of that decree and the deed made by the assignee in pursuance thereof, the grantees therein held the land thereby conveyed discharged from all liens reported in the proceedings in bankruptcy, it not appearing upon the face of that deed that it was conveyed subject to those liens. When Tate afterwards went into the state court, and became a purchaser at the sale made in pursuance of the decree rendered therein, he acquired no right in derogation of the title already vested in the heirs of R. K. Williams by virtue of the deed thus obtained by them from Daniel Trigg, assignee of Barton. We do not think it is necessary to consider other questions of interest presented in the record, but are of opinion, for reasons already stated, that there is no error in the decree complained of, and that the same should be affirmed.